OPINION OF THE COURT
Lucy Billings, J.
Petitioner seeks to vacate three default judgments issued by respondent New York City Environmental Control Board (ECB), imposing fines for three New York City Department of Buildings violations issued to petitioner (NY City Charter § 1049-a [d] [1] [d]), and to reverse respondents’ denial of petitioner’s request to vacate the default judgments. Petitioner claims respondents’ service of their notices of violation and hearing, of the default judgments, and of their determination denying petitioner’s request to vacate the default judgments was deficient and that the fines imposed were arbitrary. After oral argument, based on respondents’ administrative record and regulations and on New York City Charter § 1049-a (d), the court grants the petition and remands the proceeding to respondents for a new hearing for the reasons explained below. (CPLR 7803 [3], [4].)
I. The Undisputed Administrative Proceedings
The Department of Buildings (DOB) issued the violations on July 28, 2011, against petitioner’s residential cooperative building. Violation No. 34923721R was for a lack of fire stopping in the boiler room wall, to be corrected by installing the fire stopping. Violation No. 34923722Z was for prohibited locks on bedroom doors in two apartments, to be corrected by removing the prohibited locks. Violation No. 34923723K was for a lack of smoke detectors in specified apartments and hallways, to be corrected by installing the smoke detectors. The notices of each of the violations informed petitioner of a hearing on the violation scheduled for September 15, 2011.
Petitioner mailed certificates of correction for the three violations to DOB on September 8, 2011. Since petitioner did not *633 dispute the violations when they were issued and subsequently submitted the certificates of correction, petitioner assumed it was unnecessary to appear at the hearing to resolve the violations.
DOB disapproved petitioner’s certificates of correction, however, because they lacked a sworn explanation of how the violations were corrected. By the time petitioner received the disapprovals, it already had failed to appear at the hearing on September 15, 2011, but it resubmitted certificates of correction on October 5, 2011, which DOB approved on October 18 and 21, 2011.
Petitioner never received any notices that it had defaulted regarding the violations, either that it had defaulted in appearing for the hearing on the violations scheduled for September 15, 2011, or that a default judgment had been issued. After petitioner received bills in November 2011 for the fines imposed for the violations, $5,000 for No. 34923721R, $2,500 for No. 34923722Z, and $8,000 for No. 34923723K, petitioner, through its managing agent, submitted a request to respondents on November 30, 2011, to vacate the default judgments and reschedule the hearing.
ECB denied this request because: “You did not include information or documents you were asked to provide or the documents you provided did not prove your claim.” (Verified petition, exhibit G; verified answer, exhibit E.) ECB’s form “Request for a New Hearing After a Failure to Appear,” which petitioner submitted, states: “REASON FOR WHICH A NEW HEARING SHOULD BE GRANTED: YOU MUST CHECK ONE OF THE REASONS LISTED BELOW. ... IF NO REASON IS CHECKED, YOUR REQUEST WILL BE DENIED.” (Verified petition, exhibit F at 2; verified answer, exhibit D at 2.) Petitioner failed to indicate one of the reasons listed.
The only reason listed that conceivably may have applied to petitioner’s circumstances, however, was: “It is more than 45 days from the missed hearing date, but it is less than 30 days from the mailing date of the default order.” (Verified petition, exhibit F at 2; verified answer, exhibit D at 2.) Respondents’ administrative record includes an affidavit that a default order related to each violation was mailed to petitioner on September 20, 2011, as part of a bulk mailing of default orders to many destinations automatically generated through respondents’ database. Petitioner, however, attests that it never received any such order. Tellingly consistent with petitioner’s nonreceipt, no *634 copy of a default order or judgment that was mailed is included in respondents’ administrative record or anywhere else in the record. Because petitioner did not know when any default order was mailed, this listed reason would not be understood to apply to petitioner’s circumstances.
Another reason listed on ECB’s form “Request for a New Hearing After a Failure to Appear” was that petitioner “did not receive the ticket (notice of violation) because the issuing agency did not serve the ticket correctly.” (Verified petition, exhibit F at 2; verified answer, exhibit D at 2.) Although petitioner claims that DOB’s service of the notice of violation and hearing (NOV) for No. 34923723K, regarding a lack of smoke detectors, was deficient, petitioner did receive the NOV so this listed reason would not be understood to apply to petitioner’s circumstances either.
Petitioner did not, however, receive ECB’s denials of petitioner’s request for a new hearing on the violations, because ECB addressed its three denials, one for each violation, to petitioner in the care of its managing agent at 799 Broadway, New York, NY 10003. Petitioner’s address was 985 Amsterdam Avenue, New York, NY 10025. Its managing agent’s address was 80 East 11th Street, New York, NY 10003.
Since neither petitioner nor its managing agent received any response to petitioner’s request for a new hearing, the managing agent submitted another request on March 5, 2012. This request fully explained why petitioner failed to appear at the originally scheduled hearing, why the agent failed to include one of the listed reasons in the first request for a new hearing, and that petitioner previously had corrected the violations. Respondents never responded to this request in writing.
II. Applicable Procedural Requirements
A. Respondents’ Regulations
Respondents’ regulations do not prohibit petitioner’s second request for a new hearing after its first request was denied. The regulations only prohibit repeated requests after a request has been granted, the hearing has been rescheduled, and the requesting party has defaulted again in appearing at the rescheduled hearing. (48 RCNY 3-82 [e].) Respondents provide no reason for ECB’s failure to grant or at least to determine petitioner’s second request submitted March 5, 2012.
48 RCNY 3-82 (b) requires ECB to grant requests for new hearings received within 45 days after the missed hearing un *635 less ECB finds the request in bad faith. When a request for a new hearing is made more than 45 days after the missed hearing, 48 RCNY 3-82 (c) narrowly limits the circumstances in which ECB may grant the request. These regulatory provisions differ from the reasons listed on ECB’s form request for a new hearing. 48 RCNY 3-82 (c) (1) (A) requires a showing that the notices of violations, as opposed to the notices of the orders adjudicating the violations, were not served on petitioner by personal service according to CPLR 311 (a) (1) or other applicable law. This regulation does not require a showing that petitioner did not receive the NOVs.
The regulations are silent regarding respondents’ deficient service of notice of the orders adjudicating the violations. Nor do the regulations provide for a new hearing when a request is within 30 days after the mailing date of the default order. The triggering event is the default itself, after which a request must be submitted within 45 days. Once this period has elapsed, even if notice of the default has not yet been mailed, even the most compelling reasons will not support a new hearing unless the defaulting party’s circumstances fit 48 RCNY 3-82 (c)’s narrow prescriptions.
Nevertheless, 48 RCNY 3-81 (a) requires that notices of orders “rendered in consequence of a default” were to be sent to petitioner. Since respondents’ administrative record nowhere reveals notices of ECB’s orders rendered as a consequence of petitioner’s default in appearing on September 15, 2011, neither does any evidence indicate that, before the 45 days to reopen a default under any circumstances except bad faith expired, petitioner received any notice of that deadline. Therefore petitioner received notice of neither the default orders nor the deadline for freely reopening them, regardless of the excuse for the default. Thus petitioner was denied the opportunity to which petitioner was entitled under 48 RCNY 3-82 (b) to request a new hearing without any excuse. (Matter of Gutierrez v Rhea, 105 AD3d 481, 485-486 [1st Dept 2013]; Matter of Marciano v Goord, 38 AD3d 217, 218 [1st Dept 2007].)
B. New York City Charter § 1049-a (d)
Respondents’ regulations derive from New York City Charter § 1049-a, the regulations’ enabling legislation. (Matter of Wilner v Beddoe, 102 AD3d 582, 583 [1st Dept 2013].) Charter § 1049-a (d) (2) (a) provides that NOVs may be “served in the same manner as is prescribed for service of process” by CPLR article 3. (See Wilner v Beddoe, 102 AD3d at 583.) While ECB delivered *636 the NOVs to an officer of petitioner pursuant to CPLR 311 (a) (1), when service is effected under any of CPLR article 3’s provisions for personal delivery, such as section 311 (a) (1), CPLR 306 (b) requires that the affidavit of service describe the person served. The description must include the person’s “sex, color of skin, hair color, approximate age, approximate weight and height, and other identifying features.” (CPLR 306 [b].) DOB’s affidavit of service of NOV No. 34923723K, regarding the lack of smoke detectors, omitted any such description. (Verified answer, exhibit G at 2.)
Charter § 1049-a (d) (1) (h) further provides 30 days after the mailing of notice of a default order to request a new hearing, reopening the default:
“before a judgment based upon a default may be so entered the board must have notified the respondent [petitioner here] by first class mail . . . (i) of the default decision and order and the penalty imposed; (ii) that a judgment will be entered . . . ; and (iii) that entry of such judgment may be avoided by requesting a stay of default for good cause shown and either requesting a hearing or entering a plea pursuant to the rules of the board within thirty days of the mailing of such notice.”
Consistent with this governing law, ECB’s request form lists a reason that applies “more than 45 days from the missed hearing date,” even without a showing of deficient service of the NOVs, and applies to petitioner’s circumstances: petitioner submitted its request “less than 30 days from the mailing date of the default order.” (Verified petition, exhibit F at 2; verified answer, exhibit D at 2.)
This provision encompasses petitioner because respondents have failed to show that any default orders ever were generated for mailing to petitioner. Respondents’ affidavit of mailing does not include copies of the documents mailed. The absence of any notices of default or any default orders attached to the affidavit or included elsewhere in respondents’ administrative record raises the inference that no such documents ever were generated and certainly does not support the contrary inference that they were generated and that they were the documents mailed September 20, 2011. Respondents also fail to provide any explanation why, if default orders or notices were generated and mailed to petitioner, they are not part of the record. Nor do respondents point to any evidence that petitioner actually received, at least 30 days before its first request for a new hear *637 ing submitted November 30, 2011, notice of its default or any other evidence, such as conduct by petitioner, indicating it knew about its default. Based on the absence of default orders or notices mailed to petitioner, the 30 days from their mailing date never even began to run, encompassing petitioner within the time limitation of ECB’s request form as well as Charter § 1049-a (d) (1) (h).
While notice of the default orders may have been unnecessary for petitioner to know that it did not appear at the hearing on September 15, 2011, it demonstrates a persuasive reason why it needed that notice to know that ECB determined it to be in default. Because petitioner had certified its correction of each violation, and DOB then had approved those certifications, petitioner did not expect to be determined in default. Thus, only after petitioner received information that ECB had fined petitioner for the violations, did it contact ECB about reopening the administrative proceedings.
Petitioner’s second request for a new hearing, submitted March 5, 2012, provides this explanation. Presented with this explanation, respondents not only lack a reason for the failure to determine petitioner’s second request, but they also fail to provide a reason why petitioner’s circumstances, being unaware its nonappearance had led to default orders, did not warrant a new hearing. Petitioner’s explanation meets the Charter § 1049-a (d) (1) (h) (iii) standard of “good cause shown.” Any requirement imposed by respondents for any further showing would violate the governing Charter provision.
III. Conclusion
For the foregoing reasons, the court grants the petition to the extent of vacating any default orders and judgments issued by respondents, which imposed fines of $5,000 for NOV No. 34923721R, $2,500 for NOV No. 34923722Z, and $8,000 for NOV No. 34923723K, against petitioner. (CPLR 7803 [3], [4].) The court remands this proceeding to respondents to grant petitioner’s request submitted March 5, 2012, to reopen the hearing on the NOVs after petitioner defaulted in appearing for the hearing, and to provide a new hearing on the NOVs with reasonable advance notice of the hearing date to petitioner. This decision constitutes the court’s order and judgment granting the petition to the extent set forth above and otherwise dismissing this proceeding. (CPLR 7806.)